IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN D. FARNER, | ) | CASE NO. 5:13 CV 1551 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

Before me[1] is an action by John D. Farner under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying his applications

for disability insurance benefits and supplemental security income.[2] The Commissioner has

answered[3] and filed the transcript of the administrative record.[4] The parties have briefed their

positions[5] and participated in a telephonic oral argument.[6]

─────────────────

[1] ECF # 21. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 14.

[4] ECF # 15.

[5] ECF # 17 (Commissioner's brief); ECF # 16 (Farner's brief).

[6] ECF # 22.

**B.** **Background facts and decision of the Administrative Law Judge ("ALJ")**

Farner, who was 54 years old at the time of the administrative hearing,[7] has a GED and spent 12 years in prison for a felony.[8] He worked previously as an off bearer machine feeder and a wire harness assembler.[9]

The ALJ, whose decision became the final decision of the Commissioner, found that Farner had the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy, chronic obstructive pulmonary disease, respiratory alkalosis, diabetes mellitus, depression, obesity, and depression.[10]

After concluding that the relevant impairments did not meet or equal a listing,[11] the ALJ made the following finding regarding Farner's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently stoop, crouch and climb ramps and stairs; can only occasionally crawl and climb ladders, ropes or scaffolds; must avoid concentrated exposure to temperature extremes and humidity as well as respiratory irritants such as fumes, gasses, odors and dusts; must avoid hazards such as dangerous machinery and unprotected heights; is limited to performing simple, routine tasks with only occasional contact with others in a static environment with infrequent changes and those that did occur would be explained or

---

[7] Transcript ("Tr.") at 25, 27.

[8] *Id.* at 25, 39, 52.

[9] *Id.* at 25.

[10] *Id.* at 13.

[11] *Id.*

-2-

demonstrated; and cannot work in an environment with fast paced high production demands or quotas.[12]

The ALJ decided that this RFC precluded Farner from performing his past relevant work.[13]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above,[14] the ALJ determined that a significant number of jobs existed locally and nationally that Farner could perform.[15] The ALJ, therefore, found Farner not under a disability.[16]

**C.     Issues on judicial review and decision**

Farner asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Farner's challenge presents the following issues for judicial review:

- The ALJ's RFC finding does not have the support of substantial evidence. Farner contests the ALJ's handling of the source opinion of the treating physician, Steven Murray, M.D., and of the opinions of two examining physicians, Kirby Flanagan, M.D. and Steven Rodgers, M.D.

- Farner asserts as reversible error the ALJ's evaluation of his credibility.

---

[12] *Id.* at 15-16.

[13] *Id.* at 25.

[14] *Id.* at 26.

[15] *Id.*

[16] *Id.*

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed.

## Analysis

### A.    Standards of review

### 1.    *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[17]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[17] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[18] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[19]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.      Treating physician rule and good reasons requirement**

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[20]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[21]

---

[18] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[19] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[20] 20 C.F.R. § 404.1527(d)(2).

[21] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[22] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[23]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[24] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[25] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[26] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[27]

In *Wilson v. Commissioner of Social Security*,[28] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[22] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[23] *Id.*

[24] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[25] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[26] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[27] *Id.* at 535.

[28] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[29] The court noted that the regulation expressly contains a "good reasons" requirement.[30] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[31]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[32] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[33] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[34] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[29] *Id.* at 544.

[30] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[31] *Id.* at 546.

[32] *Id.*

[33] *Id.*

[34] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[35]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[36] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[37] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[38] *Blakley v. Commissioner of Social Security*,[39] and *Hensley v. Astrue*.[40]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[41] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[42] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give

---

[35] *Id.*

[36] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[37] *Id.* at 375-76.

[38] *Rogers*, 486 F.3d at 242.

[39] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[40] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[41] *Gayheart*, 710 F.3d at 376.

[42] *Id.*

the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[43] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[44]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[45] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[46] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[47] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[48] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[49]

---

[43] *Id.*

[44] *Rogers*, 486 F.3d at 242.

[45] *Gayheart*, 710 F.3d at 376.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[50]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[51] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[52] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[53] or that objective medical evidence does not support that opinion.[54]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[50] *Id.*

[51] *Rogers*, 486 F.3d 234 at 242.

[52] *Blakley*, 581 F.3d at 406-07.

[53] *Hensley*, 573 F.3d at 266-67.

[54] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[55] The Commissioner's *post hoc* arguments on judicial review are immaterial.[56]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[57]

- the rejection or discounting of the weight of a treating source without assigning weight,[58]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[59]

---

[55] *Blakley*, 581 F.3d at 407.

[56] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

[57] *Blakley*, 581 F.3d at 407-08.

[58] *Id.* at 408.

[59] *Id.*

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[60]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[61] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[62]

The Sixth Circuit in *Blakley*[63] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[64] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[65]

In *Cole v. Astrue*,[66] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[60] *Id.* at 409.

[61] *Hensley*, 573 F.3d at 266-67.

[62] *Friend*, 375 F. App'x at 551-52.

[63] *Blakley*, 581 F.3d 399.

[64] *Id.* at 409-10.

[65] *Id.* at 410.

[66] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

-12-

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[67]

**B.    Application of standards**

Here, as was discussed in the oral argument, the RFC is substantially based on the opinion of state agency reviewing physician Leon Hughes, M.D., who opined that Farner's impairments imposed light exertional limitations.[68] In reaching that conclusion, Dr. Hughes reviewed the opinions of two examining physicians, Steven Rogers, M.D., and Kirby Flanagan, M.D., but did not review the opinion of Farner's treating physician, Steven Murray, M.D., because Dr. Hughes's assessment predates Dr. Murray's opinion.

In *Lyons v. Commissioner of Social Security*, [69] the Sixth Circuit noted that an ALJ may rely on the opinion of a non-examining source over that of an examining one if the non-examining source "clearly states the reasons" why "his opinions differ from those of the examining physicians."[70] Dr. Hughes does not clearly state the reasons why his opinion differs from that of Dr. Murray because Dr. Hughes offered his opinion prior to Dr. Murray offering his. Despite that, the ALJ here gave Dr. Hughes's opinion "great weight" because

---

[67] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[68] Tr. at 116-17.

[69] *Lyons v. Comm'r of Soc. Sec.*, 19 F. App'x 294 (6th Cir. 2001).

[70] *Id.* at 304 (citing *Barker v. Shalala*, 40 F.3d 789, 794-95 (6th Cir. 1994).

-13-

Dr. Hughes "thoroughly reviewed the claimant's medical records" and gave an opinion "consistent with the medical evidence."[71]

But plainly this cannot be the case, since Dr. Hughes did not – indeed, could not – review Dr. Murray's opinion. [72]

Moreover, in the analysis of Dr. Murray's opinion itself, the ALJ found that "[a]lthough Dr. Murray treated [Farner], his findings are inconsistent with the medical evidence of record which often contains normal findings[,] [and are] inconsistent with his own clinical observations of [Farner], such as findings that the claimant's range of motion was normal and improving and he was able to stand relatively straight."[73]

In the first case, the ALJ cited to four instances in the record where he contends other findings establish that Farner's condition was "normal."[74] But, as Farner points out, one of the findings cited actually predates by five months the alleged onset date;[75] two findings show other than normal results;[76] and only one cited example supports the ALJ's

_____

[71] Tr. at 22.

[72] Dr. Hughes's opinion is dated March 3, 2010, and that of Dr. Murray is dated April 10, 2012. *Id.* at 22, 24.

[73] Tr. at 24.

[74] *Id.* (citing Ex 18F p. 9, 14F, 17F p. 16, 15F p. 3).

[75] ECF # 16 at 13 (citing Ex. 14F).

[76] *Id.* (citing Ex. 18F - showing lumbrosacral tenderness and positive straight-leg raise testing at 75 degrees bilaterally; and Ex. 15F p. 3 - also showing lumbrosacral tenderness and positive straight-leg raise testing at 75 degrees bilaterally).

-14-

characterization as normal results.[77] Moreover, as to the sole example of where Dr. Murray's opinion was inconsistent with his own notes, Farner observes that the ALJ quoted Dr. Murray's note significantly out of context. Where the ALJ stated that Dr. Murray found that Farner's range of motion was "normal" and that he "was able to stand relatively straight,"[78] what Dr. Murray's notes actually state is that there is "still normal range of motion but improved from previous visits where he can now stand up straighter with along with [sic] his back brace; range of motion decreased and movements painful; loss of lumbar lordosis; paraspinous muscle spasm; paraspinous musclular tenderness and tenderness over the lumbar vertebra."[79]

As Farner observes, Dr. Murray's full note "clearly" "does not entirely match the ALJ's statement. Being able to stand up 'straighter' and 'with a back brace' is not the same as 'normal.'"[80]

While there is no question that the ALJ is entitled to evaluate the evidence and to draw conclusions from it, "good reasons" for discounting the opinion of a treating source cannot include selective quotations from that source's opinion that effectively conceal more than they reveal. The reasons cited here for discounting Dr. Murray's opinion are not "good reasons" as would constitute substantial evidence for the conclusion that Dr. Murray's

---

[77] *Id.* (citing Ex. 17F p. 16 – normal leg extension findings on June 23, 2011).

[78] Tr. at 24.

[79] *Id.* at 454.

[80] ECF # 16 at 14.

opinion is entitled to only little weight. When that finding is considered in connection with the finding that the reviewing physician opinion of Dr. Hughes, which manifestly did not consider all of the medical or opinion evidence relevant to Farner, despite such a representation by the ALJ, I must conclude that the decision of the Commissioner in this case is not supported by substantial evidence, and that a remand is required.

As to the arguments concerning credibility, I find that because the matter is to be remanded on the grounds stated above, I need not further address the issue of how the ALJ dealt with Farner's credibility except to note that this question should also be revisited on remand.

## Conclusion

For the reasons stated, substantial evidence does not support the finding of the Commissioner that Farner had no disability. The denial of Farner's applications is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.


Dated: September 18, 2014                    s/ William H. Baughman, Jr.
                                             United States Magistrate Judge

-16-